UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KAYLA ROLON, COREY GILZEAN, MICHAEL HERNANDEZ, CHRISTOPHER HUSARY, KEITH CLINGMAN, and JONATHAN PECK, <br><br> Plaintiffs, <br><br> vs. <br><br><br> THE CITY OF NEW YORK, THE NEW YORK POLICE DEPARTMENT, MAYOR BILL DE BLASIO, NYPD COMMISSIONER DERMOT SHEA, NYPD CHIEF TERENCE MONAHAN, AND POLICE OFFICERS WELLS, LARS FRANTZEN (TAX ID. 936615), FIERRO (SHIELD NO. 88189), JON BRODIE (88th PRECINCT), PICHARDO (40th PRECINCT), EDUARD LUCERO, ALTAMIRANO (TAX ID 960157), SGT. ROBERT DIXSON (TAX ID. 934784), SGT SCOTT HALDEMAN, AND JOHN AND JANE DOES 1-20, individually and in their official capacities, <br><br> Defendants. | Civil Case No. <br><br> Jury Demand |

Plaintiffs, KAYLA ROLON, COREY GILZEAN, MICHAEL HERNANDEZ, CHRISTOPHER HUSARY, KEITH CLINGMAN and JOHNATHAN PECK (collectively herein "Plaintiffs"), by and through their attorneys, The Aboushi Law Firm, PLLC, as and for their Complaint, allege as follows:

<u>Preliminary Statement</u>

1. On May 25, 2020, another unarmed Black man was killed by an officer in Minneapolis. The now viral video showed the officer's grotesque indifference to George Floyd's life as he positioned his knee on George's neck for 9 minutes until he died. Other officers held George's body in place as he cried out "I can't breathe. For New Yorkers, those last words

were all too familiar because when Eric Garner was choked to death by an NYPD officer, he too cried that he could not breathe. Unfortunately, neither plea stopped the inevitable and both Eric Garner and George Floyd were killed. The killing of George Floyd sparked protests all over the country as people demanded police accountability and justice. In New York, the NYPD met protestors with violence, arrest, intimidation, and retaliation in violation of their civil rights.

2.   NYPD officers engaged in the kettling of protestors, including all Plaintiffs named herein, rounding them up causing them to fall over each other. The Officers then indiscriminately beat them with batons and bikes while deploying pepper spray across the crowds. NYPD Officers shoved Protestors to the ground, assaulted, dragged, beat and placed them in tight zip ties. NYPD vans and busses held protestors for several hours before transporting them to central booking for processing despite the threat and spread of COVID-19. In fact, many officers refused to wear masks and often tore off the masks off of protestors as they beat and arrested them.

3.   For Several months, Mayor Bill Deblasio, Commissioner Shea and NYPD Chief Terrance Monahan ("City Defendants,"), sanctioned the violent and unjustified behavior even when video showed clear evidence of violent tactics and excessive force. City Defendants encouraged and authorized the violent and abusive pattern and practice of kettling, assaulting, and arresting of protestors- without justifications or fear of consequence.

4.   Plaintiffs have been gravely harmed by the acts and omissions of the Defendants which resulted in the violations of their constitutional rights. As a result, Plaintiffs seek damages for injuries they suffered at the hands of Defendants as well as declaratory relief that the Defendant City's response to protests were unlawful, unjustified, and violent.

I. Jurisdiction and Venue

5.  This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3).

6.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

7.  Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) as at least one of the Defendants resides in this district and a substantial part of the events and/or omissions were committed in this district.

8.  Plaintiffs assert the following claims pursuant to the United States Constitution, New York Constitution, Section 42 U.S.C.§ 1983, New York State law, as well as common law.

II. Parties

9.  Plaintiff KAYLA ROLON is a resident of the City of New York, Kings County, and State of New York.

10. Plaintiff COREY GILZEAN is a resident of the City of New York, County of New York, and State of New York.

11. Plaintiff MICHAEL HERNANDEZ is a resident of the City of New York, Bronx County, and State of New York.

12. Plaintiff CHRISTOPHER HUSARY is a resident of the City of New York, Kings County, and State of New York.

13. Plaintiff KEITH CLINGMAN is a resident of the City of New York, Kings County, and State of New York.

14. Plaintiff JONATHAN PECK is a resident of the City of New York, Kings County, and State of New York.

15. Upon information and belief, Defendant Mayor BILL DE BLASIO is a resident of New York, a civil servant of the City of New York, and at all times was acting within his official

capacity as Mayor of the City of New York. As Mayor, Defendant de Blasio, at all relevant times, was and is an elected officer and the "chief executive officer of the city," NYC Charter Section 3, and had final authority to appoint and/or remove the New York City Police Commissioner.

16. Upon information and belief, Defendant DERMOT SHEA is a resident of New York, a police officer and Police Commissioner for the NYPD and City of New York, and at all times was acting within his official capacity as Police Commissioner. As Police Commissioner, Defendant Shea, personally and/or through his authorized delegates, at all relevant times had final authority to promulgate and implement administrative and managerial policies and procedures, including policies and procedures as to personnel hiring, training, supervision, and discipline with respect to NYPD officers' performance of their duties, and constituted a City policymaker for whom the City is liable.

17. Upon information and belief, Defendant TERENCE MONAHAN is a resident of New York, a police officer and Chief of Department for the NYPD and City of New York, and at all times was acting within his official capacity as a police chief, which includes policymaking authority over the NYPD.

18. Upon information and belief, Defendant WELLS is a resident of New York, a police officer and agent for the NYPD and City of New York, and at all times was acting within his official capacity as a police officer, including but not limited to, taking action as a police officer, in uniform, while displaying a gun and a badge.

19. Upon information and belief, Defendant LARS FRANTZEN is a resident of New York, a police officer and agent for the NYPD and City of New York, and at all times was acting

within his official capacity as a police officer, including but not limited to, taking action as a police officer, in uniform, while displaying a gun and a badge.

20. Upon information and belief, Defendant FIERRO (SHIELD NO. 88189) is a resident of New York, a police officer and agent for the NYPD and City of New York, and at all times was acting within his official capacity as a police officer, including but not limited to, taking action as a police officer, in uniform, while displaying a gun and a badge.

21. Upon information and belief, Defendant PICHARDO (40th PRECINCT) is a resident of New York, a police officer and agent for the NYPD and City of New York, and at all times was acting within his official capacity as a police officer, including but not limited to, taking action as a police officer, in uniform, while displaying a gun and a badge.

22. Upon information and belief, Defendant EDUARD LUCERO is a resident of New York, a police officer and agent for the NYPD and City of New York, and at all times was acting within his official capacity as a police officer, including but not limited to, taking action as a police officer, in uniform, while displaying a gun and a badge.

23. Upon information and belief, Defendant JON BRODIE is a resident of New York, a police officer and agent for the NYPD and City of New York, and at all times was acting within his official capacity as a police officer, including but not limited to, taking action as a police officer, in uniform, while displaying a gun and a badge.

24. Upon information and belief Defendant ALTAMIRANO (TAX ID 960157), is a resident of New York, a police officer and agent for the NYPD and City of New York, and at all times was acting within his official capacity as a police officer, including but not limited to, taking action as a police officer, in uniform, while displaying a gun and a badge.

25. Upon information and belief, Defendant SGT. ROBERT DIXSON (TAX ID. 934784) is a resident of New York, a police officer and agent for the NYPD and City of New York, and at all times was acting within his official capacity as a police officer, including but not limited to, taking action as a police officer, in uniform, while displaying a gun and a badge.

26. Upon information and belief, Defendant SGT. SCOTT HALDEMAN is a resident of New York, a police officer and agent for the NYPD and City of New York, and at all times was acting within his official capacity as a police officer, including but not limited to, taking action as a police officer, in uniform, while displaying a gun and a badge.

27. At all times herein, Defendant City of New York was and is a municipal entity created pursuant to the laws of the State of New York. Defendant City of New York operates and maintains the New York City Police Department ("NYPD"). The NYPD is an agency, arm and extension of the City of New York. Defendant City of New York and NYPD are the employers of the Defendant Officers and liable for their conduct.

28. At all relevant times the Defendant Officers were acting under color of State Law, including acting as police officers for the City of New York. Defendants were acting within the scope of their employment as police officers and agents for the City of New York when they engaged in the conduct described herein.

29. Officers and individuals John and Jane Does 1-20, are named individually and in their official capacity as Officials and/or Police Officers ("Defendant Police Officers" or "Officer(s)") and were at all relevant times acting under the color of state law as Police Officers. These officers engaged in conduct that violated Plaintiffs' rights, but whose identities are not yet known.

30. Defendant Police Officers are being sued in their individual and official capacities, as well as agents and employees of the City of New York.

31. Defendants were each and all responsible, in whole and/or in part, for the planning for and/or creation, promulgation, implementation, and/or enforcement of the unconstitutional policies, practices and/or customs complained of herein, and/or condoned, acquiesced in, adopted, and/or approved of the same, through their acts and/or failures to act, as set forth more fully below.

32. At all times relevant herein, as set forth more fully below, Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

33. At all relevant times, the officer-defendants were engaged in a joint venture, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

34. As an initial matter, there was no reason to use any force against any of the Plaintiffs.

35. Each Plaintiff was peacefully protesting, as is their Constitutional right to do, and were subject to unlawful and unwarranted force and arrest.

36. Furthermore, the violation of the Plaintiffs' rights were a direct result of the policies practices and procedures of Defendants City, de Blasio, Shea, and Monahan.

37. Defendants de Blasio, Shea, and Monahan are the City's policy makers.

38. All of the wrongful acts or omissions complained of herein were carried out by the individual named and unnamed police officer defendants pursuant to: (a) formal policies, rules and procedures of Defendant City; (b) actions and decisions by Defendant City's

policymaking agents including, but not limited to, Defendant de Blasio, Defendant Shea, and Defendant Monahan; (c) customs, practices, and usage of the NYPD that are so widespread and pervasive as to constitute de facto policies accepted, encouraged, condoned, ratified, sanctioned, and/or enforced by Defendant City, Defendant de Blasio, Defendant Shea, Defendant Monahan, and other policymaking officials; (d) Defendant City's deliberate indifference to Plaintiffs' rights secured by the First, Fourth, and Fourteenth Amendments of the United States Constitution, as evidenced by the City's failures, and the failures of the City's policymaking agents, to train, supervise, and discipline NYPD officers, despite full knowledge of the officers' wrongful acts, as described herein.

## II. Facts

39. Protests against police violence erupted across the nation after the May 25, 2020 police killing of George Floyd, and there were loud demands for police accountability and support for the Black Lives Matter movement.

40. The Individual Defendants repeatedly corralled protestors, beat them with batons, sprayed them with pepper spray, and arrested them without lawful justification or fair warning.

41. The conduct complained of herein was the result of the acts and omissions of the Defendant City of New York and its policy making agents.

42. As an initial matter, there was no justification for any force used against any of the Plaintiffs. Each of the Plaintiffs were peacefully protesting, as is their Constitutional right to do, as were those who testified with the NYS Attorney General and were also subjected to unlawful and unwarranted force and arrest.

43.  Furthermore, the violation of the Plaintiffs' rights was a direct result of the policies, practices and procedures of Defendant City, Mayor De Blasio, Commissioner Shea, and Chief Monahan.

44.  Defendant City has policies, rules, and procedures that gave rise to the misconduct of the individually named and unnamed Defendant-officers complained of herein.

45.  For several months between May 2020 and January 2021, the NYPD engaged in a pattern and practice of using violence against protestors that was encouraged, sanctioned and enforced by Defendant City, Defendant de Blasio, Defendant Shea, Defendant Monahan, and other policymaking officials.

46.  Defendant City failed to train, supervise, and discipline NYPD officers, despite full knowledge of the officers' misconduct.

47.  The wrongful acts or omissions complained of herein are a direct result of Defendant City's deliberate indifference to Plaintiffs' constitutional rights afforded by the First, Fourth, and Fourteenth Amendments of the United States Constitution.

48.  The City and its policy makers undertook a policy, custom, and practice of meeting peaceful protests with violence and brutality in an effort to curb lawful demonstrations and retaliate against those calling for police accountability.

49.  Additionally, the City and its policy makers failed to train NYPD officers in the appropriate way to address peaceful protesters, including the Plaintiffs.

50.  Indeed, upon information and belief, the Defendant-officers, as well as thousands of other officers, had no training in policing peaceful demonstrations, and many had no

meaningful training since the academy.[1]

51.   The policing of peaceful protesters requires that the police officers permit such protests as a Constitutional right, and not to attack, arrest, disrupt, and use force upon protesters simply because the protesters are exercising their rights.

52.   Given the clear deficiency of the training, along with the custom of tolerating unlawful arrests and brutality against protesters, the individually named and unnamed Defendant police officers violated the rights of Plaintiffs as described herein and said acts and omissions were sanctioned by Defendant City and its policymaking agents.

53.   The NYPD followed through with their egregious conduct by physically restraining the protestors with flex-cuffs and zip ties, and intentionally bound them so tight that many experienced numbing pains, accompanied by possible serious, long-term nerve damage.

54.   Furthermore, the NYPD subjected protestors to a lengthy and unnecessary arrest process that put them in dangerously close quarters at a peak in the COVID-19 pandemic in New York, all the while denying protestors the basics to keep them safe, like water, masks, and hand sanitizer.

55.   The NYPD repeatedly and intentionally used tactics that were focused on disrupting and demoralizing protests and protestors rather than employing de-escalation tactics.

56.   Just one example of many instances of excessive use of the police was highlighted by Human Rights Watch and SITU Research, [2] a 99-page report providing a detailed account

---

[1] New York City Law Department, Corporation Counsel Report (Dec. 2020) ("OCC Report"), https://www1.nyc.gov/assets/law/downloads/pdf/ProtestReport-np.pdf at page 31.

[2] **US: New York Police Planned Assault on Bronx Protesters -** *Trapping, Beatings in June Crackdown Reveal Abusive, Unaccountable System.* See https://www.hrw.org/news/2020/09/30/us-new-york-police-planned-assault-bronx-protesters#

of the NYPD's response to the June 4 peaceful protest in Mott Haven, which is a low-income, populated mostly by minorities that has experienced high levels of police brutality and ingrained systemic racism.[3] Plaintiff Michael Hernandez was assaulted and falsely arrested during said Mott Haven Protest.

57. On June 4, 2020, thousands of police officers surrounded and trapped protesters in a tactic known as "kettling" and beat people with their batons and used pepper spray on them before arresting over 250 peaceful protestors. This was the same tactic used in each protest attended by each Plaintiff named herein.

58. Further reports and video taken at the peaceful protest events show countless injuries sustained at the hands of law enforcement, including broken bones, sprained muscles and joints, and potential nerve damage due to overly tight zip ties.

59. The HRW report further notes that, "Most of those injured did not receive any immediate medical care, as police arrested or obstructed volunteer medics in medical scrubs with red cross insignia. Dozens of people spent hours in detention with untreated wounds and their hands bound behind their backs."[4]

60. This act of denying injured peaceful protestors medical care is glaring in light of the protests that regularly occur in New York City and the City's duty to protesters and those exercising their constitutional rights.

---

[3] **"Kettling" Protestors in the Bronx –** *Systemic Police Brutality and its Costs in the United States.* See https://www.hrw.org/sites/default/files/media_2020/10/us_mott%20haven0920_web.pdf

[4] **US: New York Police Planned Assault on Bronx Protesters -** *Trapping, Beatings in June Crackdown Reveal Abusive, Unaccountable System.* See https://www.hrw.org/news/2020/09/30/us-new-york-police-planned-assault-bronx-protesters#

61. Furthermore, it is evident that, at present, Defendant City has a policy and practice of deploying officers called the Strategic Response Group ("SRG") and that said officers are inadequately trained, poorly supervised and undisciplined.

62. The SRG was deployed around the City at various protests throughout 2020, including those that are subject to this lawsuit, and was created to be a specialized unit that is to respond to disorder-causing events and to conduct counter-terrorism operations.[5] Those events and operations are not the same as protests and therefore the SRG did not care to use any peaceful or de-escalation tactics in response to protests.

63. Despite the fact that their main tasks are counterterrorism related, the SRG has been regularly deployed at protests in support of the Black Lives Matter movement and at protests calling for police accountability.

64. Upon information and belief, the SRG members are to have additional Disorder Control Unit training, which utilizes the principles and tactics outlined in the Disorder Control Guidelines. Id.

65. However, a report by the Corporation Counsel for the City of New York noted that these officers did not receive the additional, supposedly mandatory, training – "for a majority of the officers who were assigned to the George Floyd protests, their training on policing protests was limited to what they had received as recruits in the Academy." [6]

---

[5] **"Kettling" Protestors in the Bronx –** *Systemic Police Brutality and its Costs in the United States.* See https://www.hrw.org/sites/default/files/media_2020/10/us_mott%20haven0920_web.pdf

[6] New York City Law Department, Corporation Counsel Report (Dec. 2020) ("OCC Report"), https://www1.nyc.gov/assets/law/downloads/pdf/ProtestReport-np.pdf.

66. Beginning in 2004, after the NYPD's use of excessive force and proactive arrest tactics were criticized, NYPD supervisors were required to routinely create "after action reports" that documented and critiqued NYPD plans for and responses to protest activities.

67. Many of the "after action reports" went public upon media coverage of a 2006 litigation *Allen v. City of New York*, 03 Civ. 2829 (KMW) (GWG) (SDNY).

68. The reports cited in media coverage praised the employment of militarized tactics, including but not limited to, employing a large number of officers in riot gear and military equipment to cause alarm amongst protestors to act as a deterrent, and even encouraged the use of 'proactive' arrests, stating that doing so would have a "powerful psychological effect" on protestors. [7]

69. After these reports went public, rather than reassessing protest policing-related policies and tactics and continuing to issue these reports, the NYPD instead opted to stop creating the records altogether while continuing the violent, intimidating, and retaliatory practices to shut down protests.

70. This worrisome conduct by the City of New York and the NYPD is compounded by the fact that its police officers have no fear of getting reprimanded for their improper or excessive use of force. On the contrary, Mayor DeBlasio and Commissioner Shea continued to praise the bravery of the officers while remaining silent on the abusive practices- including when NYPD cruisers were driven into crowds. "I've seen that video and I've obviously heard about a number of other instances. It's inappropriate for protesters to surround a police vehicle and threaten police officers. That's wrong on its face, and that

---

[7] Jim Dwyer, "Police Memos Say Arrest Tactics Calmed Protest," N.Y. Times, March 17, 2006, available at https://www.nytimes.com/2006/03/17/nyregion/police-memos-say-arrest-tactics-calmed-protest.html.

hasn't happened in the history of protests in the city," Defendant de Blasio said. https://newyork.cbslocal.com/2020/05/31/nypd-drives-into-protesters/

71. Despite the numerous instances of police brutality against protesters, the Hearing Report of the Attorney General and the OIG Report, no officers have been meaningfully held accountable and the Defendant City has failed to enact any meaningful changes to address the violence inflicted upon protestors by Police.

72. New York's Attorney General Letitia James issued an initial report in July 2020, noting the dozens of eyewitness testimony from members of the public taken via video hearings in the weeks leading up to the report.

73. Further testimony included multiple accounts where the NYPD filled, "overcrowded cells without proper PPE or the ability to socially distance [and] those detained were not provided water or food." Id.

74. The Attorney General also took testimony from elected officials, including Senator John Liu, who attended a peaceful protest on May 31, 2020, where he witnessed, "without warning, officers charged the crowd and started hitting protesters with batons." Id.

75. Public Advocate Jumaane Williams testified about his participation in a May 28, 2020 protest, where he observed "a militarized" police presence and "police wearing riot gear and using metal barricades to surround nonviolent protesters." Id.

76. The deliberate indifference to the rights of Plaintiffs by the City and its policy makers caused the Plaintiffs to be assaulted, subjected to excessive force, and arrested while exercising their constitutionally protected rights.

77. The City and its policy makers did nothing as numerous instances of police brutality towards protesters went viral, thereby condoning and sanctioning an ad hoc policy for

Defendant Officers to continue responding to protestors in the same manner.

78. The predictable result of the City's failure to train their officers and interject in the brutality of protesters directly caused the violation of Plaintiffs' rights to protest, assembly, as well as be free from unlawful arrest, seizure, and excessive force.

79. In another instance that went viral, Protestor Dounya Zayer was violently pushed by an NYPD officer while his commander, Craig Edelman, watched and walked right by. Instead of holding the police officer accountable, Commander Edelman was featured as an example of excellent police leadership in a video by the Mayor's office.[8]

80. The Defendant City also failed to train its officers that if they see other officers engaged in misconduct/unlawful activity, such as the unlawful use of force and inhibiting the exercise of free speech, protest, and assembly in this matter, they must intervene to prevent it.

81. The Defendant City's failure to train its officers has been highlighted in the past year with numerous reports of aggressive police responses to protests across the country and in New York City.

82. City of New York and the NYPD, including its Police Chief and superior officers, created a tacit policy and custom of permitting the Defendant-Officers' unlawful actions to continue with their imprimatur and approval.

83. Upon information and belief, Defendant-Officers were not trained, provided additional supervision or additional monitoring of their performance specifically to prevent the unlawful use of force upon Plaintiffs and violate their rights.

---

[8] **NYPD Precinct Commander Ousted After Brutality Video Shows up in de Blasio Slideshow -**
https://www.thecity.nyc/2021/2/1/22261453/nypd-brutality-video-de-blasio-precinct-reform-slideshow

Experience of Named Plaintiffs KAYLA ROLON and COREY GILZEAN

84. On June 1, 2020, Plaintiffs Rolon and Gilzean were peacefully and lawfully exercising their Constitutional Rights to assemble, free speech, and protest at an event in Times Square when they were surrounded by NYPD officers, including Defendant Officer Lars Frantzen and Sgt. Robert Dixson, amongst other John and Jane Doe Officers that are unknown to Plaintiffs at this time but known to Defendants.

85. Plaintiffs Rolon and Gilzean were brutally shoved, attacked, beaten and subsequently arrested.

86. Defendant NYPD police officers did not give a dispersal order, but rather, surrounded Plaintiffs and other protestors to ensure that it was impossible for them to disperse.

87. Police Officers, including Defendant Officer Lars Frantzen and Sgt. Robert Dixson, rushed into the crowds and began beating protestors with their fists and batons.

88. Plaintiff Rolon witnessed a John Doe police officer swinging his baton at Plaintiff Gilzean, so she did her best to shield him from the attack.

89. The John Doe police officer realized that Plaintiff Rolon was attempting to defend Plaintiff Gilzean from his assault and retaliated against Rolon and began beating her with his baton instead.

90. Plaintiff Gilzean was shoved by officers causing him to drop his bag with his personal items inside, including his wallet.

91. Plaintiff Gilzean reached for his bag but was shoved and told that he was not allowed to retrieve his bag.

92. Plaintiff Gilzean was then forcefully shoved to the ground, where several police officers began beating Gilzean with their batons.

93. Plaintiff Gilzean was held by his dreadlocks so that he could not leave.

94. About the same time, Plaintiff Rolon was thrown across the street by the police officers that attacked Plaintiff Gilzean.

95. Plaintiff Rolon was forcefully thrown to the ground and hit her head on the hard pavement.

96. The police officer instructed Plaintiff Rolon to remain on the ground, or else he would continue to beat her with his baton.

97. Plaintiffs Rolon and Gilzean were arrested and separated from each other and their mutual friends and taken to be booked separately.

98. Plaintiffs were restrained by zip ties that were so tight that they lost feeling in their fingers, which became numb and turned blue.

99. Plaintiffs sustained numerous physical injuries, including but not limited to, cuts, scratches, and severe bruises.

100. Plaintiff Rolon was taken to the 14th precinct where she was unlawfully detained for 20 hours.

101. Plaintiff Gilzean sustained similar injuries, including but not limited to, cuts, scratches, severe bruises, and two dreadlocks were ripped from his head by a John Doe police officer.

102. Plaintiff Gilzean was detained for about 8-9 hours.

103. As a result of Defendants' conduct, Plaintiffs Rolon and Gilzean demand judgment against Defendants in a sum of money to be determined at trial including compensatory and punitive damages along with costs and attorney's fees.

104. Plaintiffs' injuries include severe permanent emotional, physical and psychological trauma and injury.

Experience of Named Plaintiff CHRISTOPHER HUSARY

105. On or about May 29, 2020 at 8:00p.m. by the Barclay's Center in Brooklyn, Plaintiff Husary, a documentary photographer and film maker, joined peaceful protestors in exercising their Constitutional Rights to protest by Dekalb Avenue, Kings County.

106. Plaintiff Husary joined several hundred peaceful protestors while documenting the protest with his phone.

107. Plaintiff Husary witnessed, at the police precinct on Classon and Dekalb, that there was a bus being used by Defendants to shield the police precinct and to corner protestors that were to be arrested. The peaceful protestors chanted "Hands up, don't shoot."

108. Plaintiff Husary, on his bike, was corralled in with the protestors and Defendants, in riot gear, used their shields, batons, and pepper spray to lunge forward and attack the peaceful protestors.

109. Defendant Police Officers Fierro, and Brodie, and John and Jane Doe Officers that are unknown to Plaintiffs at this time but are known to Defendants, did not give Plaintiff Husary or other protestors a chance to move or disperse.

110. Defendants violently arrested Plaintiff Husary and beat him with their batons without cause.

111. Two or three John Doe police officers punched Plaintiff Husary and hit his hands with batons because he did not want to let go of his bicycle.

112. Eventually, Plaintiff Husary had to release his hold on his bicycle due to the severe pain he was experiencing from having batons hit his hands repeatedly.

113. Defendant Officers Fierro and Jon Brodie slammed Plaintiff Husary's head into the ground causing his tooth to chip and his hands were cuffed tightly.

114. Plaintiff Husary was taken to the 88th precinct and was detained for approximately 15 hours.

115. At the precinct, Plaintiff Husary attempted to use his hand sanitizer and a John Doe police officer snatched it out of his hands and threw it to the ground.

116. Plaintiff Husary was not allowed to wash his hands for sanitation purposes, nor was he allowed to wash off the pepper spray.

117. Plaintiff Husary suffered multiple open wounds, swollen knees, and severe bruising.

118. Plaintiff Husary still experiences pain when using his hands and suffers from headaches, and his tooth is also chipped as a result of being slammed into the ground.

119. Furthermore, Plaintiff Husary's vintage Italian 1980's bicycle, which he found the next day, was completely totaled and unsalvageable.

120. As a result of Defendants' conduct, Plaintiff Husary demands judgment against Defendants in a sum of money to be determined at trial including compensatory and punitive damages along with costs and attorney's fees.

Experience of Named Plaintiff Michael Hernandez

121. Plaintiff Hernandez was exercising his Constitutional right to peacefully protest and joined other protestors on June 4, 2020 in the Bronx, New York.

122. Defendant Police Officers, including Pichardo, Eduard Lucero, Sgt. Scott Haldeman, and John and Jane Doe Officers that are unknown to Plaintiffs at this time but known to Defendants, pushed the crowd of protestors in the front with their bikes and began indiscriminately assaulting and arresting protestors.

123. Plaintiff Hernandez was lawfully among the crowd, was forcefully thrown to the ground and arrested at 8:00 p.m by Defendant Pichardo.

124. Defendants kept Plaintiff Hernandez and 24 other protestors were cuffed for over eight and a half hours in a prison van.

125. Defendant Officer Lucero and Sgt. Haldeman were at the precinct and finally uncuffed Plaintiff Hernandez at around 4:00 a.m. and forced him to sit in a jail cell with 20 other individuals for another 5 hours, despite the ongoing pandemic.

126. Plaintiff Hernandez asked for water many times and Defendant Officer Lucero stated that he did not deserve it.

127. Plaintiff Hernandez was finally released at 9:00 a.m. the following day.

128. Upon release, Plaintiff Hernandez suffered from severe bruising, and emotional and psychological trauma as a result of Defendants actions.

129. As a result of Defendants' conduct, Plaintiff Hernandez demands judgment against Defendants in a sum of money to be determined at trial including compensatory and punitive damages along with costs and attorney's fees.

Experience of Named Plaintiff Keith Clingman

130. On September 12, 2020 at approximately 8:15pm, at or near the 34th police precinct located at 4295 Broadway, New York, NY 10033, without provocation, Officer Wells, pursuant to his role as a police officer, assaulted and used unlawful force upon Plaintiff Clingman, including grabbing his person and slamming him to the floor thereby causing his wrist and elbow to fracture.

131. Plaintiff was lawfully present at the location and was exercising his Constitutional Rights to peacefully protest.

132. Other members of the NYPD were present, witnessed the assault and failed to intervene and instead failed to call medical help for Plaintiff Clingman.

133. Plaintiff Clingman struggled to get up with no one helping him.

134. Upon getting up, Plaintiff Clingman approached Police Officer Wells to ask for his badge number and tell him that he had broken his arm.

135. Other officers heard Plaintiff's statements to the officer and witnessed the altercation but refused to help him.

136. On Friday February 12, 2021, during a police accountability protest in Manhattan, Plaintiff Clingman was standing on the sidewalk with other protestors when officers began arresting an unhoused person. Approximately 80 SRG officers arrived on the scene in riot gear.

137. As the unhoused person was being arrested, Clingman began filming the arrest when approximately then SRG's charged at him and other protestors, while on the sidewalk, without cause or justification.

138. A commanding officer placed Plaintiff under arrest and when Clingman asked for the basis of the arrest stating he did not do anything, the commander replied, "I don't give a shit."

139. At that point, an NYPD officer grabbed Plaintiff Clingman by while several officers jumped on top of him and began beating him. At the same time, an officer dug his thumb in Plaintiff Clingman's left eye and then another officer punched him in the back of his head behind his ear in an attempt to knock him unconscious.

140. Plaintiff Clingman was thrown face first into a pile of ice and approximately five officers were on top of him, with one putting their knee with their full weight on the back of Plaintiff Clingman's head, pushing it further in the ice.

141. City of NY has instilled a policy, custom, and practice in which it encourages and

condones the brutal repression of protester's right in an effort to inhibit the lawful expression of rights.

142. NYPD encourages its officers to use unlawful violence and other unlawful techniques against protesters and others exercising their rights.

143. As a result of Defendants' conduct, **Plaintiff Clingman** demands judgment against Defendants in a sum of money to be determined at trial including compensatory and punitive damages along with costs and attorney's fees.

Experience of Named Plaintiff Jonathan Peck

144. On the evening of January 18, 2021, Plaintiff Jonathan Peck was participating in a peaceful protest in honor of Martin Luther King Day.

145. Upon exiting the Brooklyn Bridge and approaching an intersection near Centre Street and Chambers street, the NYPD began pushing and herding protestors to City Hall Park.

146. A John Doe police officer began playing the electronic backpack device on his back stating for protestors to get out of the street or be charged with disorderly conduct after a countdown.

147. Once the countdown ended Police Officers began arresting anyone that they could grab.

148. A line of twelve John Doe Police Officers stood in a line 15 feet from Plaintiff Peck, pointed at Plaintiff and his friend, and charged at them.

149. A John Doe police officer tackled Plaintiff to the ground, and another 3-4 John Doe Police Officers pinned Plaintiff Peck to the ground.

150. Plaintiff could hardly breathe due to chest pain after being thrown to the ground.

151. Defendant John Doe Police Officers zip tied Plaintiff Peck's hands and arrested him.

152. Plaintiff Peck, along with dozens of other protestors, was transported to the precinct, where he was held for about four hours.

153. Upon release, Plaintiff Peck went to the hospital for chest pains where he was informed that he had a severely inflamed chest wall that could take weeks or months to recover – with each case varying depending on levels of ongoing physical activity.

154. As a result of Defendants' conduct, Plaintiff Peck demands judgment against Defendants in a sum of money to be determined at trial including compensatory and punitive damages along with costs and attorney's fees.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
#### Excessive Force/Unlawful Use of Force

155. Plaintiffs repeat and reallege each and every Paragraph as if fully set forth herein.

156. Defendant police officers used unreasonable, unlawful and excessive force against Plaintiffs, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States, 42 U.S.C. § 1983, NYS Constitution, New York State laws, and the common laws of New York.

157. Defendants' actions were without any legal justification, and the force used upon Plaintiffs was excessive and unwarranted. Defendants' use of force against Plaintiffs was not justified and was applied wholesale against all protestors such as "kettling," shoving protestors with their bikes and pepper spraying the groups pursuant to or in violation of NYPD policies and practices.

158. Each Plaintiff was also struck with batons, dragged and shoved to the ground. Plaintiff Gilzean had at least two of his dreadlocks ripped from his head by Defendant-Officers.

159. Plaintiff Husary was beaten and shoved by Defendant-Officers to the point of breaking his tooth and continues to experience pain when trying to ride his bicycle.

160. Plaintiff Clingman was beaten by Defendant-Officer Wells with such force that he broke Plaintiff's arm and was punched repeatedly about his head.

161. As a direct and proximate result of each Defendants' acts and/or omissions, Plaintiffs suffered and continues to suffer significant severe physical and emotional injuries.

162. As a direct and proximate result of the above unlawful conduct, Plaintiffs were caused to suffer personal injuries, violation of their rights under Federal, State, and common law, rights to be free from unlawful use of force, assault, and battery, emotional distress, anguish, anxiety, fear, humiliation, and loss of freedom.

163. As a result of Defendants' impermissible conduct, Plaintiffs demands judgment against Defendants in a sum of money to be determined at trial.

SECOND CAUSE OF ACTION
Assault and Battery

164. Plaintiffs repeat and reallege each and every Paragraph as if fully set forth herein.

165. Defendants approached Plaintiffs and struck them with baton and/or bikes causing them to suffer substantial injuries.

166. Defendants approached Plaintiffs in an aggressive and hostile manner, causing them to fear for their safety and be apprehensive of the bodily harm inflicted upon them by the Defendants.

167. Defendants also used unlawful force upon Plaintiffs, including striking them with incredible force that they suffered serious physical and psychological injuries.

168. Each and every named Plaintiff was beaten by Defendants with batons. Defendants' use of force against Plaintiffs was not justified and was applied wholesale against all protestors

such as "kettling," shoving protestors with their bikes and pepper spraying the groups pursuant to or in violation of NYPD policies and practices.

169. Each Plaintiff was also struck with batons, dragged and shoved to the ground.

170. As a result of Defendants' unlawful conduct, Plaintiffs demands judgment against Defendants in a sum of money to be determined at trial.

THIRD CAUSE OF ACTION
Violation of Right to Free Speech, Assembly, and Expression, and Retaliation

171. Plaintiffs repeat and reallege each and every Paragraph as if fully set forth herein.

172. Defendants-Officers were in uniform and acting under color of law when they engaged in the aforementioned conduct.

173. The Defendants visited brutal violence upon Plaintiffs simply because they were exercising their rights under the United States and New York Constitutions of Expression, Speech and Assembly.

174. The Defendants sought to inhibit their speech, assembly, and expression.

175. As police officers, Defendants had the aim of inhibiting the exercising of Plaintiffs' rights, discouraging same, and inflicting physical harm upon them so that they would not continue to engage in conduct protected by the first amendment.

176. Defendants retaliated against Plaintiffs for exercising their first amendment rights by failing to hold officers accountable who engaged in the acts or omission complained herein, sanctioning continued behavior in violation of or consistent with NYPD policies and practices and also arresting Plaintiffs.

177. Defendants succeeded in their violation of Plaintiffs' rights to speech, assemble, and protest when they caused them significant injuries that inhibited their ability to exercise these rights.

178. As a result of Defendants' unlawful conduct, Plaintiffs demands judgment against Defendants in a sum of money to be determined at trial.

FOURTH CAUSE OF ACTION
*Monell* Liability/Respondeat Superior/Failure to Supervise/Failure to Monitor/Negligent
Hiring/Retention/Training/Failure to Protect

179. Plaintiffs repeat and reallege each and every Paragraph as if fully set forth herein.

180. The City of New York, via the NYPD, has effectively ratified the misconduct of the Defendant-Officers. The violation of Plaintiffs' Federal, State, and common law rights and resulting injuries were further directly, foreseeably, proximately, and substantially caused by conduct chargeable to the City of New York.

181. Defendant City of New York and the NYPD maintained a policy whereby, upon information and belief, they failed to meaningfully investigate IA and CCRB complaints, if they investigated them at all, thereby creating a policy and custom whereby officers felt that they could violate the rights of citizens with impunity and they would not be held accountable, particularly in the case of the Defendant-Officers.

182. Defendants used unlawful and significant force upon Plaintiffs constituting improper, unlawful, and excessive use of force.

183. The City of New York and the NYPD are liable for the conduct of the Defendant Officers pursuant to respondeat superior as Defendant-Officers were acting within the scope of their employment, in furtherance of their job duties and on behalf of the City of New York when they engaged Plaintiff and committed the acts complained of herein.

184. In addition, the City of New York and the NYPD and the Defendant-Officers acted under color of law pursuant to an official policy or custom and practice of the NYPD whereby the use of unlawful and excessive force was permitted, tolerated, and condoned, and

intentionally, knowingly, recklessly or with deliberate indifference failed to properly and adequately control, monitor, and discipline on a continuing basis their employees, agents and/or servants and/or otherwise failed to prevent the individual Defendants from unlawfully using excessive force upon Plaintiffs and violating their rights to protest and free speech.

185. The City of New York and NYPD failed to protect Plaintiffs and provide a safe opportunity for them to exercise their rights.

186. As a direct and proximate result of the above-described impermissible conduct, Plaintiffs were caused to suffer personal injuries, violation of their civil rights, as well as State and common law rights, emotional distress, anguish, anxiety, fear, humiliation and loss of freedom.

187. As a result of Defendants' impermissible conduct, Plaintiffs demand judgment against Defendants in a sum of money to be determined at trial.

<u>FIFTH CAUSE OF ACTION</u>
<u>Failure to Intervene</u>

188. Plaintiffs repeat and reallege each and every Paragraph as if fully set forth herein.

189. Each of the Defendant-Officers engaged in the use of excessive force and assault of the Plaintiffs.

190. While each Defendant-Officer was engaged in the use of excessive force and the violation of Plaintiffs' rights as alleged herein, those who were not using force against Plaintiffs failed to intervene to prevent the use of excessive force in violation of Plaintiffs' rights, despite an opportunity to do so.

191. The Defendant-Officers watched as Plaintiffs were unlawfully subjected to excessive, unnecessary, and unlawful force.

192. Each Defendant had an opportunity to intervene as the use of excessive, unnecessary and unlawful force was being deployed against Plaintiffs in front of them and within their immediate area. Each Defendant failed to instruct other officers not to use force or physically restrain the officers from using force.

193. Rather than intervene to stop the use of excessive force and the violation of Plaintiffs' rights as alleged in this Complaint and as the law requires, the Defendant officers did nothing and, upon information and belief, then attempted to conceal the use of excessive force by making false statements about what occurred in seeking to justify the unlawful use of force.

194. As a direct and proximate result of the above conduct, Plaintiffs suffered personal injuries, violation of their common law, State law and civil rights, emotional distress, anguish, anxiety, fear, humiliation and loss of freedom.

195. As a result of Defendants' impermissible conduct, Plaintiffs demands judgment against Defendants in a sum of money to be determined at trial.

<u>SIXTH CAUSE OF ACTION</u>
<u>Unlawful Arrest, False Arrest, Unlawful Search and Seizure</u>

196. Plaintiffs repeat and reallege each and every Paragraph as if fully set forth herein.

197. Defendant-Officers engaged in an unlawful arrest and seizure of Plaintiffs.

198. Each Defendant-Officer detained and arrested Plaintiffs without probable cause to do so.

199. Each Defendant seized Plaintiffs without any probable cause or legal justification to do so.

200. At no time did Plaintiffs consent to their detainment.

201. No Defendant obtained a warrant for Plaintiffs' arrest, and nor did they have any legal justification to stop, seize, detain, arrest, or prosecute Plaintiffs.

202. Plaintiffs did not consent to the unlawful arrest and seizure.

203. As a direct and proximate result of the above impermissible conduct, Plaintiffs suffered personal injuries, violation of their common law, State law, and civil rights, emotional distress, anguish, anxiety, fear, humiliation and loss of freedom.

204. As a result of Defendants' unlawful conduct, Plaintiffs demands judgment against Defendants in a sum of money to be determined at trial.

**WHEREFORE,** Plaintiffs demands that judgment be entered against the Defendants, jointly and severally, for:

(a) any and all damages sustained by the Plaintiffs arising from the foregoing wrongful and unlawful acts of the Defendants;

(b) punitive damages against the individual Defendant-Officers where permissible by law;

(c) interest, both pre-judgment and post-judgment;

(d) a declaration that Defendant's violated the rights of Plaintiffs;

(e) an Injunction/Order prohibiting the Defendants from violating the rights of protesters, and amending their policies to inhibit the violation of rights as alleged herein;

(f) appointing a receiver to monitor and implement changes to protect the Constitutional rights of Plaintiffs and others similarly situated.

(g) attorney's fees and costs; and

(h) Grant such other and further relief as this Court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interests of justice.

## JURY DEMAND

Plaintiffs demands a trial by jury in this action for all issues triable by a jury.

Dated: March 24, 2021

Respectfully submitted,
The Aboushi Law Firm PLLC
s/Aymen A. Aboushi
Aymen A. Aboushi, Esq.

Tahanie A. Aboushi, Esq.
The Aboushi Law Firm
1441 Broadway, 5th Floor
New York, NY 10018
Tel: (212) 391-8500
Fax: (212) 391-8508
Aymen@Aboushi.com
Tahanie@Aboushi.com
*Attorneys for Plaintiffs*