UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT NEW YORK

----------------------------------------------------------------- x
In Re: New York City Policing During Summer 2020 Demonstrations : 20 Civ. 8924 (CM)(GWG)
----------------------------------------------------------- :
This filing is related to: :
:
ALL CASES :
----------------------------------------------------------------- x

## DECLARATION OF ABIGAIL B. EVERDELL IN SUPPORT OF THE CONSOLIDATED PLAINTIFFS' MOTION FOR AN ORDER COMPELLING THE CITY TO IMPLEMENT PARAGRAPH 89(h) OF THE STIPULATED ORDER

I, Abigail B. Everdell, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.  I am counsel at the law firm of Davis Wright Tremaine LLP, attorneys for the Plaintiffs in the case *Gray et al. v. City of New York et al.*, No. 21-CV-6610 ("*Gray*"), which has been consolidated into the above-captioned action (the "Consolidated Protest Cases"[1]). I submit this Declaration in support of the Consolidated Plaintiffs' Motion (the "Motion") for an order Compelling Defendant the City of New York (the "City") to implement Paragraph 89(h) of the Stipulated Order (Dkts. 1099-2 and 1166-1; entered at Dkt. 1167) (the "Stipulated Order" or "S.O."). This Declaration is based on my personal knowledge, except as otherwise indicated.

---

[1] The Consolidated Protest Cases include *Gray*; *Payne, et al., v. de Blasio et al.*, No. 20-CV-8924 ("*Payne*"); *People of the State of New York v. City of New York et al.*, No. 21-CV-322 ("*People*"); and *Rolon et al. v. City of New York*, No. 21-CV-2548 ("*Rolon*"). The plaintiffs in these cases are collectively referred to as "Plaintiffs" or "Consolidated Plaintiffs."

1

**Implementation of the Stipulated Order**

2.   For nearly a year, I and other counsel for the Consolidated Plaintiffs have been communicating with counsel for the City regarding implementation of the NYPD trainings and policy required by the Stipulated Order, pursuant to S.O. Paragraphs 98-101. As part of this process, the City has provided drafts of policies and trainings relating to treatment of members of the press by NYPD officers, and Plaintiffs have provided feedback on those policies.

3.   The City provided its first draft related to treatment of members of the press on June 28, 2024. Plaintiffs responded by letter on August 23, 2024, and included an appendix of material deficiencies, including omissions of policies and trainings implementing Paragraph 89. The parties met and conferred in September 2024, as well as by subsequent letter on February 14, 2025.

4.   Between December 2024 and January 2025, the NYPD finally shared a full set of six draft press-specific policy and training materials related to NYPD interactions with members of the press. On March 10, 2025, Plaintiffs provided written feedback on these six policy and training documents. In their cover letter, Plaintiffs wrote, "One change worth highlighting concerns the presumption to issue process at the point of encounter in the event a member of the press is arrested for a C-summons eligible Red Light Offense, as specified in Paragraph 89-h of the Settlement Agreement. As originally drafted, these trainings generally referenced this summons-on-site presumption only in the context of First Amendment Activities, where the Settlement Agreement is clear that no such limitation applies. Accordingly, we have proposed revisions to bring the materials in line with the Settlement Agreement." A true and correct copy of the March 10, 2025 cover letter is attached as **Exhibit A**.

5. On March 28, 2025, the City provided updated drafts of the six policy and training materials. In its cover email, the City wrote that the arrest of journalists procedures set forth in Paragraph 89(h) of the Stipulated Order policy apply only in the context of FAAs because "[the] Red Light/Green Light [policy] is only during FAAs and does not apply across the board to members of the press in all [NYPD] encounters." A true and correct copy of this March 28, 2025 cover email is attached as **Exhibit B**.

6. The draft policy and training materials attached to the City's March 28, 2025 cover email bore out this position. Two of the attached materials state that the Paragraph 89(h) policy only applies in the context of FAAs. These are the document entitled "Media_Press_Powerpoint.pptx" (a true and correct copy of which is attached as **Exhibit C**) at Slide 25, and the document entitled "NYPDU Media_Press.docx" (a true and correct copy of which is attached as **Exhibit D**) at Slides 25-26.

7. Two additional draft policy and training materials attached to the City's March 28, 2025 cover email risk implying that the Paragraph 89(h) policy only applies at FAAs, and fail to clarify otherwise. These are the document entitled "Final Draft Day 1 Module 8 1.22.2025 – edited.docx" (a true and correct copy of which is attached as **Exhibit E**) at page 14, and the document entitled "PG 212-49.pdf" (a true and correct copy of which is attached as **Exhibit F**) at page 4.

8. On April 8, 2025, Plaintiffs wrote an email to the City confirming its position that "Paragraph 89(h) contains no provision limiting its application to FAAs," and requested dates for a meet-and-confer on this issue. A true and correct copy of an email thread encompassing this April 8, 2025 correspondence is attached as **Exhibit G.**

9. The parties met and conferred on April 15, 2025. At the meet-and-confer, Plaintiffs offered to provide additional documentation of settlement discussions—which had not been attended by current lead counsel for the City—demonstrating that Paragraph 89(h) was never intended to apply only in the context of FAAs. The City reserved its final position on the issue pending this information.

10. On April 16, 2025, however, before Plaintiffs had sent the additional information, the City sent correspondence confirming once again that it would not implement Paragraph 89(h) outside the context of FAAs. Plaintiffs responded that same day, disputing the City's interpretation of Paragraph 89(h). A true and correct copy of an email thread encompassing this April 16, 2025 correspondence between the parties, as well as the April 8, 2025 correspondence referenced at Paragraph 8, supra, is attached as **Exhibit G**.

11. Plaintiffs followed up with an additional email on April 16, 2025 transmitting documentation from the parties' settlement negotiations, which further demonstrated that Paragraph 89(h) was not intended to only apply during FAAs.

12. On April 23, 2025, having had no response, Plaintiffs sent a letter to the City confirming the parties' impasse with regard to their interpretations of Paragraph 89(h), and their intent to file a motion pursuant to Paragraph 101(d) of the Stipulated Order. A true and correct copy of this letter is attached as **Exhibit H**.

13. The City responded on April 23, 2025, confirming the parties' impasse.

14. In a subsequent meet and confer regarding the conclusion of Phase I under the parties' Stipulated Order, the City informed Plaintiffs that it would not consider Phase I complete until the question of how to implement Paragraph 89(h) has been resolved.

**Settlement Discussions**

15. Attached hereto as **Exhibit I** is a true and correct copy of correspondence between the parties in connection with mediation settlement discussions dated December 15, 2022. This correspondence was among the evidence provided by Plaintiffs to the City on April 16, 2025.

16. Attached hereto as **Exhibit J** is a true and correct copy of correspondence between the parties in connection with mediation settlement discussions dated December 23, 2022. This correspondence was among the evidence provided by Plaintiffs to the City on April 16, 2025.

17. I have sought and received agreement from each of the parties to the Stipulated Order to filing Exhibits I and J under seal in connection with the Motion. The City noted its consent was without waiver of its anticipated argument "that they are irrelevant parol evidence."

I declare under the penalty of perjury that the foregoing is true and correct. Executed on May 7, 2025.

_____
ABIGAIL B. EVERDELL